UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                              Plaintiff,<br><br>v.<br><br>SHONEN DURAN INOCENTE-HINOJOSA,<br><br>                              Defendant. | Case No.:  3:20-mj-20545-AHG<br><br>**ORDER:**<br><br>**(1) DENYING MOTION TO DISMISS THE COMPLAINT;**<br><br>**(2) DEFERRING RULING ON MOTION TO SUPPRESS STATEMENTS UNTIL TRIAL;**<br><br>**(3) DENYING MOTION TO COMPEL;**<br><br>**4) SETTING DEADLINE FOR PRODUCTION OF DISCOVERY; and**<br><br>**(4) GRANTING MOTION FOR LEAVE TO FILE FURTHER MOTIONS**<br><br>**[ECF No. 18]** |

Before the Court are Defendant's consolidated motions to: 1) dismiss the complaint; 2) suppress statements; 3) compel discovery; and 4) grant leave to file further motions. ECF No. 18. The Court took the matters raised in the Motion under submission after oral argument on August 4, 2020. ECF No. 25. Having considered the parties' papers and their argument, the Court enters the following Order:

## I.     BACKGROUND

Defendant is charged with violating 8 U.S.C. § 1325(a)(1), which provides, in relevant part, that "[a]ny alien who (1) enters or attempts to enter the United States at any time or place other than as designated by immigration officers . . . shall [be guilty of a misdemeanor]." *See* ECF No. 1. The Government alleges that on March 3, 2020, a United States Customs and Border Patrol ("Border Patrol") agent encountered Defendant on the side of the road at the intersection of Honey Springs Road and State Route 94, approximately nine miles north of the United States/Mexico International Boundary and approximately ten miles west of the Tecate, California Port of Entry. *Id.* at 2. The Government alleges that during the agent's immigration inspection, Defendant stated that he is a citizen of Peru, without immigration documents allowing him to enter or remain in the United States legally. *Id.*

The agent placed Defendant under arrest and took him to the Border Patrol station for processing. *Id.* The Government alleges that Defendant was advised of his *Miranda* rights and agreed to answer questions without an attorney present. *Id.* During custodial questioning, the Government alleges that Defendant stated that he is a citizen of Peru and that he illegally entered the United States on March 1, 2020.

Defendant's case proceeded under the "Streamline" process, which the Department of Justice uses to manage prosecution of misdemeanor charges brought under 8 U.S.C. § 1325. *See United States v. Chavez-Diaz*, No. 18MJ20098 AJB, 2018 WL 9543024, at *1–2 (S.D. Cal. Oct. 30, 2018) (describing the Department of Justice's "Operation Streamline" process, as implemented by the Government in this Court), *rev'd on other grounds*, No. 18-50391, 2020 WL 562292 (9th Cir. Feb. 5, 2020). On March 4, 2020,

Defendant was brought to Court for his initial appearance. ECF No. 18 at 2. Defendant met with an attorney on the ground floor of the Federal Building that morning before his appearance. *Id.* At his initial appearance, the Court arraigned Defendant, appointed counsel to represent him, and set conditions of pretrial release. ECF No. 6.

On June 23, 2020, Defendant filed the consolidated motion currently before the Court, seeking various forms of relief, including dismissal of the Complaint. ECF No. 18. In addition to seeking dismissal of the Complaint, Defendant moves the Court to suppress statements and grant leave to file further motions. *Id.* The Court will address the Motion to Dismiss before turning to the other motions.

## II.   DISCUSSION

### A. Motion to Dismiss

Defendant moves to dismiss the Complaint on two grounds: 1) the "Streamline" process violates equal protection and due process, and 2) the prosecution of asylum seekers violates the Fifth Amendment, statute, and international treaty obligations.

The Court addresses each of Defendant's arguments below.

#### 1.   Challenges to Streamline Process

Defendant argues that the Government's use of the "Streamline" process to prosecute him, rather than through the Central Violations Bureau ("CVB"), violates equal protection and due process. As described in Defendant's Motion, the CVB process is used to prosecute violations of certain federal laws, and violations of certain state laws that occur on federal property. *See* ECF No. 18 at 3-4. Defendants who are prosecuted through the CVB are rarely detained for more than a few hours. They receive a notice to appear instead. At their initial appearance, they have the opportunity to meet with an attorney who can help them negotiate a disposition. CVB defendants are also typically able to avoid any appearance through payment of a fine. Defendant argues that the Government discriminated against him and denied him due process by not processing him through CVB, even though his offense was less serious than other charges handled through CVB.

First, Defendant argues that the Government violates the Equal Protection Clause of

the United States Constitution by processing defendants charged with a misdemeanor violation of 8 U.S.C. § 1325 under the Streamline process, rather than through the CVB process. Because they are punishable by no more than six months, § 1325 offenses are classified as Class B misdemeanors and are considered "petty offenses" under federal law. See 18 U.S.C. §§ 19, 3559(a)(7). Other petty offenses, as well as some felonies, are prosecuted through CVB. *See, e.g.*, ECF No. 15, Ex. G (reflecting the CVB docket sheet for October 10, 2018). Thus, Defendant argues that the Government is treating similarly situated defendants differently on the basis of alienage, in violation of the Equal Protection Clause, by not processing them through the CVB process like other petty offenses.

The Equal Protection Clause is part of the Fourteenth Amendment, and states in relevant part that the government shall not "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV. A threshold issue on which the parties disagree is the standard of review that applies. Defendant contends the strict scrutiny standard applies.

The Court agrees with multiple judges in this district who have concluded that § 1325 does not create a classification based on alienage that would invoke strict scrutiny. *See, e.g.*, *United States v. Ramirez-Ortiz*, 370 F. Supp. 3d 1151, 1154 (S.D. Cal. 2019); *United States v. Silva-Sosa*, No. 18MJ23270-KSC, 2019 WL 1470868, at *2–3 (S.D. Cal. Apr. 3, 2019); *United States v. Mazariegos-Ramirez*, No. 18MJ22276-WQH, 2019 WL 338923, at *2 (S.D. Cal. Jan. 28, 2019); *Chavez-Diaz*, 2018 WL 9543024, at *3.[1] The Government's decision to bring § 1325 charges using the Streamline process creates a

---

[1] *Chavez-Diaz* was reversed by the Ninth Circuit on February 5, 2020 because the Court of Appeals found that the defendant had waived his right to bring his constitutional challenges on appeal by entering an unconditional guilty plea, while the district court had found no waiver and considered the constitutional challenges on their merits. *See Chavez-Diaz*, No. 18-50391, 2020 WL 562292, at *2-6 (9th Cir. Feb. 5, 2020). Therefore, the Ninth Circuit opinion reversing the district court does not address the merits analysis, much less contradict it.

distinction among defendants based on their alleged criminal activity (attempting to enter or entering the United States unlawfully), not based on alienage. That is, rather than creating a separate court for processing alien defendants with respect to *any* criminal charges brought against them, the Streamline process is only used with respect to charges brought based on alleged unlawful entry in violation of § 1325(a). *See Ramirez-Ortiz*, 370 F. Supp. 3d at 1154 (quoting *United States v. Mendoza-Hinojosa*, 216 F.3d 1085, 2000 WL 429701, at *2 (9th Cir. 2000) (unpublished table case) for the dual proposition that there exists a "distinction between statutes which classify based on alienage and statutes which classify based on criminal actions" and that "imposing different rules on immigrants versus citizens does not in itself create a suspect classification").

Moreover, the Supreme Court has recognized that Congressional acts regarding immigration are "subject only to narrow judicial review." *Fiallo v. Bell*, 430 U.S. 787, 792 (1977) (citation omitted). In *Fiallo*, the Supreme Court recognized that "in the exercise of its broad power over immigration and naturalization, 'Congress regularly makes rules that would be unacceptable if applied to citizens.'" *Id.* (quoting *Mathews v. Diaz*, 426 U.S. 67, 80 (1976)). Even if the Streamline process has a disparate impact on aliens, therefore, it would not be subject to strict scrutiny. *See also United States v. Barajas-Guillen*, 632 F.2d 749, (9th Cir. 1980) ("[C]lassifications among aliens made pursuant to the immigration laws need only be supported by some rational basis to fulfill equal protection guarantees.").

Applying the rational basis test, the Court finds that the Streamline process readily meets this standard. Although the Equal Protection Clause requires all similarly situated persons to be treated alike, "so too, 'the Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (internal alteration and citation omitted). "Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.'" *Id.* at 223. In analyzing whether the Government's processing of § 1325 defendants through the Streamline process rather than CVB survives rational basis review, the question is whether "the classification at issue

bears some fair relationship to a legitimate public purpose." *Hoffman v. United States*, 767 F.2d 1431, 1436 (9th Cir. 1985) (quoting *Plyler*, 457 U.S. at 216).

The Government's proffered reasons for finding Defendant's § 1325 offense unsuitable for disposition through the CVB include: 1) The CVB is "a national center charged with processing violation notices (tickets) issued and payments received for petty offenses committed on federal property[,]" and thus a criminal misdemeanor offense under Title 8 of the United States Code is not the type of offense for which the CVB calendar was designed, ECF No. 18 at 4 (quoting Central Violations Bureau, www.cvb.uscourts.gov); and 2) since Defendant was arrested for his alleged offense rather than being given a violation notice, Rule 5 of the Federal Rules of Criminal Procedure entitled Defendant to be taken "without unnecessary delay" before a magistrate judge following his arrest, making it impossible to route his case to the CVB for processing. *Id.* at 5; Fed. R. Crim. P. 5(a)(1)(A). Each of these reasons for processing § 1325 defendants differently than other defendants accused of federal "petty offenses" satisfies the rational basis standard of review.

In finding the test met, the Court here adopts Judge Anthony J. Battaglia's detailed explanation and persuasive reasoning on the same question in *Chavez-Diaz*, 2018 WL 9543024, at *1–4. In addition, the Court notes that requiring the Government to process § 1325 defendants through the CVB would likely prove unworkable given the nature of the charge: unlawful entry into the United States by an alien. As Defendant notes, CVB defendants are not taken into custody. They are allowed to continue living in the United States without restriction, and typically given the option to either pay a fine or appear at a hearing. That would not be a manageable way to address individuals whose alleged offense is entering the United States without authorization.

Second, Defendant argues his prosecution under the Streamline process violates the Due Process Clause. Defendant argues that his substantive due process rights have been violated because it shocks the conscience to deprive § 1325 defendants of the benefits of the CVB process. The Court disagrees. Defendant's arrest and detention were supported

by a showing of probable cause, which was reviewed and approved by a magistrate judge. Following his detention, Defendant was brought to the federal building, where he met with an attorney. A magistrate judge appointed counsel to represent him and set conditions of pretrial release. None of these procedures shocks the conscience.

Defendant's claim that his right to procedural due process was violated also fails. A procedural due process analysis considers three factors: 1) the "private interest that will be affected by the official action;" 2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and 3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

To be sure, the liberty interest that is implicated when an individual is detained by the Government is substantial. But that interest must be weighed against the Government's interest, and as discussed above, the Government has put forth substantial reasons why processing § 1325 defendants through the CVB would not be practicable. Further, the procedures that have been put into place through the Streamline process adequately protect against the risk of an erroneous deprivation of that interest. Those procedures include a probable cause review to support detention, appointment of counsel, and consideration of pretrial release conditions under the Bail Reform Act. Therefore, Defendant's procedural due process claim does not establish a constitutional violation under the *Mathews* balancing test.

The Court denies Defendant's motion to dismiss based on his constitutional challenges to the Streamline process.

### 2. Prosecution of Asylum Seekers

Defendant next argues that this case should be dismissed because the prosecution of an asylum petitioner violates the Due Process Clause of the Fifth Amendment, Defendant's statutory right to seek asylum, and international treaty obligations. Although there is no constitutional right to asylum, aliens seeking asylum and facing removal are entitled to due

process. *Abdulai v. Ashcroft*, 239 F.3d 542, 549 (3d Cir. 2001); *Haitian Refugee Ctr. v. Smith*, 676 F.2d 1023, 1039 (5th Cir. 1982). The Government violates due process with respect to asylum petitioners when it makes it "utterly impossible" to petition for asylum. *Haitian Refugee Ctr.*, 676 F.2d at 1039. Defendant makes no attempt to argue that his prosecution has deprived him of a meaningful opportunity to apply for asylum, much less that it has made it "utterly impossible" for him to petition for asylum.

Defendant also argues that the prosecution of an asylum petitioner under § 1325 interferes with the statutory right to apply for asylum provided in 8 U.S.C. §§ 1158 and 1225. This argument also fails because Defendant has not shown how his prosecution has interfered with his asylum petition. Moreover, as recognized by Judge Barry T. Moskowitz in another case in this Court addressing the same issue, §§ 1158, 1225, and 1325 are not in conflict. The statutory scheme instead reflects congressional intent to allow criminal prosecution of aliens seeking asylum. *Ramirez-Ortiz*, 370 F. Supp. 3d at 1155.

Defendant also argues that this case should be dismissed because the prosecution of an asylum seeker violates the 1967 United Nations Protocol Relating to the Status of Refugees. Defendant claims that "[t]he Convention and Protocol have been incorporated into federal immigration law, and should be enforceable as a matter of federal law." ECF No. 18 at 11. This claim ignores Ninth Circuit precedent to the contrary:

> The United States acceded to the Protocol in 1968, though it did not sign the Convention itself. However, the Protocol is not self-executing. A "self-executing" treaty has "automatic domestic effect as federal law upon ratification. Conversely, a 'non-self-executing' treaty does not by itself give rise to domestically enforceable federal law." Therefore, the Protocol does not have the force of law in American courts. Instead, the Supreme Court and our court have both stated that the Protocol serves only as a useful guide in determining congressional intent in enacting the Refugee Act of 1980, which sought to bring United States refugee law into conformity with the Protocol.

*Khan v. Holder*, 584 F.3d 773, 783 (9th Cir. 2009) (quoting *Medellin v. Texas*, 552 U.S. 491 n.2 (2008)) (other internal quotations and citations omitted). Therefore, Defendant

cannot rely on the Protocol to challenge his prosecution because the Protocol is not judicially enforceable. *Id.*; *United States v. Guevara-Medina*, No. 18-mj-9443 BTM, 2018 WL 3970092, at *1 (S.D. Cal. Aug. 20, 2018).

Even if the Protocol were enforceable in this Court, Defendant cannot rely on it to avoid prosecution. Article 31(1) of the Protocol, on which Defendant relies, only applies to persons who "present themselves without delay to the authorities and show good cause for their illegal entry or presence." *See Ramirez-Ortiz*, 370 F. Supp. 3d at 1155. Defendant has not made any showing that he presented himself without delay to the authorities.

The Court denies Defendant's motion to dismiss based on the alleged unlawful prosecution of asylum petitioners.

### B. Motion to Suppress Statement

Defendant argues that statements made prior to, during, and after his arrest should be suppressed. Because it is not clear what statements made by Defendant, if any, the Government intends to introduce at trial, the Court defers this motion until trial.

### C. Motion to Compel the Production of Further Discovery

Defendant asks the Court to compel the production of further discovery in broad categories. At the hearing on the motion, the Government stated that it had produced discovery available to it to date, and that it would continue to comply with its discovery obligations. Because Defendant has not identified any particular items or categories of discovery that should be compelled, the Court denies this motion without prejudice. The Court will, however, set a deadline for the Government to complete its production. All discovery and information required by *Giglio v. United States*, 405 U.S. 150 (1972); *Brady v. Maryland*, 373 U.S. 83 (1963); *United States v. Henthorn*, 931 F.2d 29 (9th Cir. 1991); the Jencks Act; Fed. R. Crim. P. 16; and Fed. R. Evid. 404(b) must be produced by the Government on or before September 11, 2020.

//
//
//

### D. Motion for Leave to File Further Motions

Finally, Defendant moves for leave to file further motions. Defendant's request is general, referring to no specific motion Defendant anticipates filing. The Government does not oppose the request. Therefore, the Court grants the motion for leave to file further motions, provided they are addressed solely to new information and arguments not previously brought before the Court.

### III. CONCLUSION

For the reasons set forth above, the Court: (1) **DENIES** Defendant's Motion to Dismiss the Complaint; (2) **DEFERS** ruling on Defendant's motion to suppress statements; (3) **DENIES** Defendant's Motion to Compel discovery, without prejudice; (4) **ORDERS** completion of discovery by September 11, 2020; and (4) **GRANTS** Defendant leave to file further motions.

**IT IS SO ORDERED.**

Dated: August 4, 2020

_____
Honorable Allison H. Goddard
United States Magistrate Judge